UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| VICTORIA WRIGHT, | : | Case No. 3:18-cv-400 |
| Plaintiff, | : | |
| vs. | : | District Judge Walter H. Rice |
| | : | Magistrate Judge Sharon L. Ovington |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : | |
| Defendant. | : | |

# REPORT AND RECOMMENDATIONS[1]

## I. Introduction

Plaintiff Victoria Wright has suffered for many years with back pain and other health problems. She brings this case challenging the Social Security Administration's denial of her applications for period of disability, Disability Insurance Benefits, and Supplemental Security Income. She applied for benefits in March 2015, asserting that she could no longer work a substantial paid job. Administrative Law Judge (ALJ) Mark Hockensmith concluded that she was not eligible for benefits because she is not under a "disability" as defined in the Social Security Act.

The case is before the Court upon Plaintiff's Statement of Errors (Doc. #7), the Commissioner's Memorandum in Opposition (Doc. #11), Plaintiff's Reply (Doc. #12), and the administrative record (Doc. #6).

---

[1] Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.

Plaintiff seeks a remand of this case for payment of benefits or, at a minimum, for further proceedings. The Commissioner asks the Court to affirm ALJ Hockensmith's non-disability decision.

## II. Background

Plaintiff asserts that she has been under a "disability" since March 15, 2015. She was fifty years old at that time and was therefore considered a person "closely approaching advanced age" under Social Security Regulations. *See* 20 C.F.R. §§ 404.1563(d), 416.963(d). She has a high school education. *See id.* §§ 404.1564(b)(4), 416.964(b)(4).[2]

The evidence of record is sufficiently summarized in the ALJ's decision (Doc. #6, *PageID* #s 60-75), Plaintiff's Statement of Errors (Doc. #7), the Commissioner's Memorandum in Opposition (Doc. #11), and Plaintiff's Reply. Rather than repeat these summaries, the pertinent evidence will be discussed when addressing the parties' arguments.

## III. Standard of Review

The Social Security Administration provides Disability Insurance Benefits and Supplemental Security Income to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 423(a)(1), 1382(a). The term "disability"—as defined by the Social Security Act—has specialized meaning of limited scope. It encompasses "any medically

---

[2] The remaining citations will identify the pertinent Disability Insurance Benefits Regulations with full knowledge of the corresponding Supplemental Security Income Regulations.

determinable physical or mental impairment" that precludes an applicant from performing a significant paid job—i.e., "substantial gainful activity," in Social Security lexicon. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see Bowen,* 476 U.S. at 469-70.

Judicial review of an ALJ's non-disability decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met—that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance . . . ." *Rogers*, 486 F.3d at 241 (citations and internal quotation marks omitted); *see Gentry*, 741 F.3d at 722.

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746. "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to

follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part *Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

IV. **The ALJ's Decision**

As noted previously, it fell to ALJ Hockensmith to evaluate the evidence connected to Plaintiff's applications for benefits. He did so by considering each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. § 404.1520. He reached the following main conclusions:

> Step 1: Plaintiff has not engaged in substantial gainful employment since March 15, 2015.
>
> Step 2: She has the severe impairments of degenerative disc disease of the cervical and lumbar spine; mild arthritis of the left hip; mild right knee osteoarthritis; obesity; bilateral carpal tunnel syndrome; hypertension; anxiety disorder; panic attacks; and depressive disorder.
>
> Step 3: She does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.
>
> Step 4: Her residual functional capacity, or the most she could do despite her impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of "light work … except (1) no climbing of ladders, ropes or scaffolds; (2) occasional climbing of ramps and/or stairs; (3) can frequently balance; (4) occasional stooping, kneeling, crouching, or crawling; (5) no work at unprotected heights or with dangerous machinery; (6) can do tasks involving frequent handling and fingering bilaterally; (7) can frequently reach overhead bilaterally; (8) should be limited to simple, routine tasks; (9) in a static work environment [with] few changes in routine; (10) and no fast paced work or strict production quotas."
>
> Step 4: She is unable to perform any of her past relevant work.

4

Step 5: She could perform a significant number of jobs that exist in the national economy.

(Doc. #6, *PageID* #s 60-75). These main findings led the ALJ to ultimately conclude that Plaintiff was not under a benefits-qualifying disability. *Id.* at 75.

V. **Discussion**

Plaintiff contends that the ALJ erred in evaluating the medical source opinions and medical data. The Commissioner maintains that substantial evidence supports both the ALJ's decision.

A. **Medical Opinions**

Social Security Regulations require an ALJ to consider and evaluate every medical opinion in the record. *See* 20 C.F.R. §§ 416.927(b), (c). Further, ALJs must adhere to certain standards when weighing medical opinions. "Key among these is that greater deference is generally given to the opinions of treating physicians than to those of non-treating physicians, commonly known as the treating physician rule." *Rogers,* 486 F.3d at 242 (citations omitted). The rule is straightforward:

> Treating-source opinions must be given "controlling weight" if two conditions are met: (1) the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) the opinion "is not inconsistent with the other substantial evidence in [the] case record."

*Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (quoting in part 20 C.F.R. § 404.1527(c)(2)); *see Gentry*, 741 F.3d at 723.

If the treating physician's opinion is not controlling, "the ALJ, in determining how much weight is appropriate, must consider a host of factors, including the length,

5

frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors." *Rogers*, 486 F.3d at 242 (citing *Wilson*, 378 F.3d at 544).

The Regulations also require ALJs to provide "good reasons" for the weight placed upon a treating source's opinions. *Wilson*, 378 F.3d at 544. This mandatory "good reasons" requirement is satisfied when the ALJ provides "specific reasons for the weight placed on a treating source's medical opinions." *Id*. (quoting Soc. Sec. R. 96-2p, 1996 WL 374188, at *5 (Soc. Sec. Admin. July 2, 1996)). The goal is to make clear to any subsequent reviewer the weight given and the reasons for that weight. *Id*. Substantial evidence must support the reasons provided by the ALJ. *Id*.

Plaintiff's treating physician, Remon Obeid, M.D., provided two separate statements regarding Plaintiff's treatment. In August 2015, Dr. Obeid diagnosed hypertension, acute lymphadenitis, hyperlipidemia, dyspareunia, constipation, and diabetes mellitus. (Doc. #6, *PageID* #557). He indicated that Plaintiff is overweight, has a "limited weight lift ability," and has knee pain as the result of severe knee osteoarthritis. *Id.* at 558. For the remainder of the questions, he referred to his attached treatment notes. *Id.* at 557-58. Dr. Obeid completed a second questionnaire in March 2016. *Id.* at 638. He noted that he sees Plaintiff once a month to six weeks. He diagnosed morbid obesity, hypertension, and cervical spinal stenosis. In October 2015, she began having symptoms including headaches, numbness and tingling in her right arm and fingers, and weakness in her right hand. Dr. Obeid recommended that Plaintiff be off work for six months (until September 2016). *Id.* at 641. Dr. Obeid did not respond to

any questions regarding Plaintiff's ability to complete various activities—for example, he did not indicate how much she could lift or how long she could sit. Instead, he noted he could not respond because he did not evaluate Plaintiff for those tasks. *Id.* at 639-41.

The ALJ assigned Dr. Obeid's opinions "at best, little weight." *Id.* at 73. The ALJ found, "Although Dr. Obeid is very vague in his assessment of [Plaintiff's] residual functional capacity, the evidence of record does indicate that her ability to lift has been diminished … as a result of her physical impairments." *Id.* Further, he assigned "little to no weight" to Dr. Obeid's opinion that Plaintiff should be off work for six months because "there is no evidence that Dr. Obeid took into consideration that [Plaintiff] can do other work." *Id.*

Plaintiff takes issue with the ALJ's evaluation of Dr. Obeid's opinion. Nonetheless, the ALJ provided sufficient reasons for discounting Dr. Obeid's opinions. For instance—significant to this case—the ALJ correctly observed that Dr. Obeid's opinions are vague. Indeed, Dr. Obeid's opinions do not include any specific functional limitations.

Moreover, the ALJ agreed with Dr. Obeid that Plaintiff had a "limited weight lift ability." Specifically, he found that Plaintiff's "ability to lift has been diminished" and accordingly concluded that Plaintiff had the residual functional capacity to perform a reduced range of light work. Light work, defined by the Regulations, "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds...." 20 C.F.R. §404.1567(b). Because Dr. Obeid did not indicate how much Plaintiff could lift, the ALJ's assessment does not run contrary to Dr. Obeid's opinion.

7

Further, although Dr. Obeid opined that Plaintiff should be off work for six months, that is an insufficient length of time to establish a disability under the Regulations. *See* 20 C.F.R. § 404.1509 ("Unless [the claimant's] impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months."). Further, as the ALJ accurately noted, "there is no evidence that Dr. Obeid took into consideration that [Plaintiff] can do other work." (Doc. 6, *PageID* #73). Indeed, Dr. Obeid did not did not provide any further explanation for his opinion. Given his barebone opinions, substantial evidence supports the ALJ's conclusion.

But, Plaintiff further contends, the ALJ improperly rejected evaluating physician Dr. Onamusi's opinion. Under the Regulations, because ALJ Hockensmith did not assign controlling weight to Plaintiff's treating physician's opinions, the ALJ must explain the weight he assigned other medical opinions of record. *See* 20 C.F.R. §§ 416.927(e)(2)(ii) ("Unless a treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician, psychologist or other medical specialist, as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for us.").

ALJ Hockensmith assigned "at best, little weight" to Dr. Onamusi's opinions and gave a few reasons. First, he concluded that Dr. Onamusi's opinions were inconsistent with the evidence of record. (Doc. #6, *PageID* #69). Second, the ALJ found that Dr. Onamusi's examination findings—for example, normal gait, good grip strength, and normal range of motion in all her extremities—do not support his opinion that Plaintiff

8

can sit for 40 minutes, stand for 35 minutes, walk a block, and lift five pounds. *Id*. Instead, the ALJ concluded, Dr. Onamusi's determinations "appear to be largely supported by [Plaintiff's] own subjective complaints and assessment of her functional capacity." *Id*. Indeed, the ALJ determined, "There has been *no evidence* presented that would indicate that [Plaintiff] is incapable of lifting as much as 20 pounds occasionally and ten pounds frequently." *Id.* (emphasis added). Further, "there is *no evidence* that [Plaintiff] is incapable of standing and/or walking six hours in any given eight-hour workday and sitting six hours in any given eight-hour workday." *Id.* (emphasis added).

Contrary to the ALJ's conclusion that Dr. Onamusi relied on Plaintiff's subjective complaints and her own assessment of her functional capacity, Dr. Onamusi completed a thorough examination of Plaintiff and identified several objective findings. For example, Dr. Onamusi noted that Plaintiff had tenderness along her cervical thoracic junction region and lower lumbar region and reduced range of motion in her cervical and dorsolumbar spine. *Id.* at 630-31. These findings support Dr. Onamusi's conclusion that Plaintiff had "Chronic neck, back and polyarticular pain of the extremities probably degenerative-mild." *Id.* at 628.

Furthermore, substantial evidence does not support the ALJ's conclusion that there is no evidence that supports Dr. Onamusi's opinions. There is—at the very least—some evidence that supports his opinions. For instance, as noted above, his own examination findings support his opinion. Further, medical records from after Dr. Onamusi's examination support his conclusions. Specifically, three months after his examination, an MRI of Plaintiff's cervical spine revealed advanced discovertebral degeneration at C5-6

9

and C6-7; central spinal stenosis at C5-6 and C6-7 (asymmetric to the left at C5-6); mild to moderate left foraminal narrowing C5-6; and mild right foraminal narrowing at C6-7. *Id.* at 700-01. And Dr. Onamusi indicated that Plaintiff reported numbness and tingling in her hands with non-dermatomal areas of sensory disturbance mostly involving the left hand." *Id.* at 628. In August 2016, an EMG showed moderate to severe left and severe right carpal tunnel syndrome. Further, she had axonal degeneration of both median nerve injuries for which James B. Hoover, M.D., recommended surgery. *Id.* at 713.

Additionally, Plaintiff's treating doctor's opinions and treatment notes are consistent with Dr. Onamusi's opinions. Dr. Obeid similarly opined that Plaintiff's ability to lift was limited. *Id.* at 558. Further, Dr. Obeid indicated that Plaintiff has numbness and tingling in her right fingers and arm and weakness in her right hand. *Id.* at 638. Given these consistent findings, substantial evidence does not support the ALJ's conclusions that there is *no evidence* that supports Dr. Onamusi's opinion regarding Plaintiff's limitations.

Accordingly, for the above reasons, Plaintiff's Statement of Errors is well taken.[3]

**B.     Remand**

A remand is appropriate when the ALJ's decision is unsupported by substantial evidence or when the ALJ failed to follow the Administration's own regulations and that shortcoming prejudiced the plaintiff on the merits or deprived the plaintiff of a substantial right. *Bowen*, 478 F.3d at 746. Remand may be warranted when the ALJ failed to

---

[3] In light of the above discussion, and the resulting need to remand this case, an in-depth analysis of Plaintiff's other challenges to the ALJ's decision is unwarranted.

provide "good reasons" for rejecting a treating medical source's opinions, *see Wilson*, 378 F.3d at 545-47; failed to consider certain evidence, such as a treating source's opinions, *see Bowen*, 478 F.3d at 747-50; failed to consider the combined effect of the plaintiff's impairments, *see Gentry*, 741 F.3d at 725-26; or failed to provide specific reasons supported by substantial evidence for finding the plaintiff lacks credibility, *see Rogers*, 486 F.3d at 249.

Under sentence four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Consequently, a remand under sentence four may result in the need for further proceedings or an immediate award of benefits. *E.g., Blakley*, 581 F.3d at 410; *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994). The latter is warranted where the evidence of disability is overwhelming or where the evidence of disability is strong while contrary evidence is lacking. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is unwarranted in the present case because the evidence of disability is not overwhelming and the evidence of disability is not strong while contrary evidence is lacking. However, Plaintiff is entitled to an Order remanding this case to the Social Security Administration pursuant to sentence four of § 405(g) due to the problems discussed above. On remand, the ALJ should be directed to evaluate the evidence of record, including the medical source opinions, under the applicable legal criteria mandated by the Commissioner's Regulations and Rulings and by case law; and to evaluate Plaintiff's disability claim under the required five-step sequential analysis to

determine anew whether Plaintiff was under a disability and whether her applications for Disability Insurance Benefits and Supplemental Security Income should be granted.

**IT IS THEREFORE RECOMMENDED THAT**:

1. The Commissioner's non-disability finding be vacated;

2. No finding be made as to whether Plaintiff Victoria Wright was under a "disability" within the meaning of the Social Security Act;

3. This matter be **REMANDED** to the Social Security Administration under sentence four of 42 U.S.C. § 405(g) for further consideration consistent with this Report and Recommendations, and any decision adopting this Report and Recommendations; and

4. The case be terminated on the Court's docket.

January 6, 2020    *s/Sharon L. Ovington*
Sharon L. Ovington
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).